IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERGE HELENE LTD., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-08-2931 |
| § | | |
| GE OIL & GAS, INC., *et al.*, § | | |
| Defendants. § | | |

# **MEMORANDUM AND ORDER**

This case is pending before the Court on two discovery disputes. Defendant GE Oil & Gas, Inc. ("GE") filed a Motion for Reconsideration [Doc. # 141] of the Court's December 15, 2010 Order [Doc. # 140] compelling production of certain documents. Plaintiff has filed a Response [Doc. # 142]. GE neither filed a reply nor requested additional time to do so. Having considered the full record and applicable legal authorities, the Court **denies** the Motion for Reconsideration.

Also pending before this Court is Plaintiff's letter dated February 9, 2011, treated as a Motion for Relief [Doc. # 144] ("Motion for Relief"), requesting GE pay costs associated with re-examination of certain witnesses and preparation of revised expert witness reports due to GE's late production of documents. GE has filed a

Response [Doc. # 148] and Plaintiff has replied [Doc. # 151].[1] Having considered the full record and applicable legal authorities, the Court **grants in part and denies in part** Plaintiff's Motion for Relief.

I.   **BACKGROUND**

Plaintiff, Berge Helene, is the owner of a Floating Production, Storage and Offloading unit ("FPSO") used in the storage and production of petroleum products. Defendant GE is a company that *inter alia* manufactures gas compressors. In December 2002, GE entered into an agreement with Flotech Limited ("Flotech"), which provided that Flotech would package compressors manufactured by GE. In 2003, Berge Helene tendered a bid to a third-party to provide the services of its FPSO and to provide 70 mmscfd of gas compression in an oil field off the coast of Mauritania. In order to meet these compression requirements, Berge Helene entered into a contract with ABB Offshore Systems AS ("Aibel") for the purchase and installation of three compressors on the FPSO. Aibel in turn contracted with Flotech to purchase GE compressors packaged by Flotech. Berge Helene's Complaint [Doc. # 1] alleges that shortly after the compressors were placed into production they experienced significant and ongoing failures that resulted in Berge Helene being

---

[1]   Documents Nos. 144 and 151 were submitted under seal. Plaintiff filed a supplemental copy of its Motion for Relief with exhibits [Doc. # 145] also under seal. Defendants also filed certain exhibits to its Response under seal [Doc. # 149].

unable to provide the contractually required rate of gas compression. Accordingly, on October 1, 2008, Berge Helene brought suit in this Court against GE alleging breach of express warranties and breach of implied warranties of fitness. Plaintiff seeks damages in excess of $21,000,000. The case is before the Court on two unrelated discovery disputes.

First, on October 20, 2010, Plaintiff filed a Motion to Direct Production [Doc. # 109], seeking communications between GE and Flotech from January 1, 2008, to the present. GE objected to production on the ground that such documents were subject to a common interest and/or joint defense privilege. After careful analysis including *in camera* inspection of the documents at issue, the Court concluded that some, but not all, of the documents are protected by the joint defense privilege. Accordingly in a Memorandum and Order dated December 15, 2010 [Doc. # 140], the Court granted in part and denied in part Plaintiff's Motion to Direct Production. In its Memorandum and Order, the Court ruled that the documents listed on the Privilege Log as Nos. 103 and 104 were not privileged, noting the lack of factual support as to how the communications or the individuals privy to those communications related to GE or Flotech's litigation efforts. The Court stated that any request for reconsideration of this ruling must be accompanied by additional factual support. GE filed the instant Motion for Limited Reconsideration [Doc. # 141], seeking the Court's reevaluation

of its ruling with respect to Privilege Log. Nos. 103 and 104. That issue is now ripe for decision.

Second, on January 3, 2011, GE made a supplemental production to Plaintiff of roughly 9,500 documents consisting of approximately 70,000 pages. Although GE had indicated that it believed these documents were duplicative, in late January, Plaintiff discovered documents in this supplemental production that had not previously been produced.[2] GE maintains and Plaintiff does not dispute that the late production was caused by an "e-vendor" error which led GE to believe the documents were largely duplicative.[3] The parties' discovery deadline was to expire on February 28, 2011, having been extended on several occasions at one or more parties' requests. Because of the pending discovery disputes, the parties agreed to and the Court granted a further extension of the discovery period until May 9, 2011.

---

[2] It is not entirely clear what percentage of these documents had not previously been produced. Plaintiff states that "[a]nalysis to date suggests that some 8,600 of the 9,500 documents on the disk had not been previously produced." *See* Plaintiff's letter dated February 9, 2011 [Doc. # 144] ("Motion for Relief"), at 3. GE maintains that Plaintiff has only identified 159 pages of this late production as warranting reexamination of witnesses and revision of expert reports. *See* Response to Motion for Relief [Doc. # 148], at 1. Plaintiff explains, however, that this reflects only those documents which Plaintiff specifically sent to GE. Plaintiff states it "feels no further obligation to identify for [GE] materials that were not previously produced," and that the number of pages is "significantly greater than 159 pages." Motion for Relief, at 4-5.

[3] GE's letter dated February 8, 2011 [Doc. # 143], at 1. GE has not identified this vendor in any of its briefing currently before the Court

In anticipation of the close of discovery at the end of February 2011, Plaintiff completed the witness depositions prior to GE's belated document production. In its Motion for Relief, Plaintiff seeks entry of an Order directing GE (1) to present for supplemental depositions five current and/or former GE employees and three third-party witnesses located abroad; (2) to pay all costs associated with such supplemental depositions including attorney preparation time; (3) to pay the costs of revising Plaintiff's expert's report; (4) to provide a revised expert report of Hasu Gajjar; and (5) to pay costs associated with filing the instant Motion for Relief. GE "recognizes that its last production was delayed and does not seek to disadvantage plaintiff due to the delay."[4] GE agrees to pay Plaintiff's "reasonable extra costs due to the production, including reexamination of certain witnesses."[5] The parties disagree, however, as to what constitutes Plaintiff's reasonable extra costs. This issue is now ripe for decision.

## II.  DISCUSSION

### A.  GE's Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004). Reconsideration motions are generally analyzed under the standards for a motion to

---

[4]   *Id.* at 2.

[5]   *See* Response to Motion for Relief [Doc. # 148], at 1-2.

alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the reconsideration motion is filed within 28 days of the challenged order or when the motion seeks reconsideration of an interlocutory order. *See, e.g.*, *Shepherd*, 372 F.3d at 327 n.1 (drawing the line at 10 days instead of 28 days because the case was decided before the amendments to Rule 59 took effect on December 1, 2009); *Herrington v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, No. H-09-0601, 2011 WL 177133, at *1 (S.D. Tex. Jan. 19, 2011) (drawing the line at 28 days in line with the current Rule 59(e)). Because GE moved for reconsideration within 28 days, Rule 59(e) applies.

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re TranstexasGas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A motion to alter or amend judgment under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" and "cannot be used to raise arguments which could, and should, have been made before the judgment is issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (internal quotations omitted). "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."

*Templet*, 367 F.3d at 479. Importantly, a "Rule 59(e) motion is not proper to re-litigate matters that have been resolved to the movant's dissatisfaction and Plaintiff cannot have a 'second bite at the apple' on the same issues that were previously addressed by the parties and this Court." *Alvarado v. Texas Rangers*, 2005 WL 1420846, at *2 (W.D. Tex. June 14, 2005). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

GE seeks reconsideration of the Court's December 15, 2010 Memorandum and Order [Doc. # 140] insofar as it held that Privilege Log Nos. 103 and 104 were not protected by the joint defense privilege. In Privilege Log No. 103, M.J. Ternow ("Ternow") forwarded a document to H. Christian Lous ("Lous") at GE on December 1, 2009.[6] The document labeled Privilege Log No. 104 is Lous's November 15, 2010,

---

[6] As stated in the Court's December 15, 2010, Memorandum and Order [Doc. # 140], the attachment referenced in Privilege Log No. 103 was not included with these emails for the Court's inspection. GE had argued that the attached document was first forwarded from Flotech's outside counsel to a GE representative on June 4, 2009. The Court found that this argument was not supported by any meaningful evidence, such as an affidavit on personal knowledge. In its Motion for Reconsideration, GE has supplemented this argument with a declaration of its outside counsel, Shawn Bates, Esq., who declares that the attachment to Privilege Log No. 103 is identical to the first attachment to Privilege Log No. 17, a June 4, 2009, email between Flotech's counsel and a GE employee. *See* Declaration of Shawn Bates in Support of Defendant's Motion for Limited Reconsideration [Doc. # 141-1], ¶¶ 5, 6.

brief response.[7] In holding that GE had not met its burden to demonstrate that these emails are protected by the joint defense privilege, the Court repeatedly noted the lack of factual support as to how these individuals or documents relate to either GE or Flotech's litigation efforts and as to whether these emails were sent for the specific purpose of defending either the Norway suit[8] or this lawsuit. The Court instructed that any request for reconsideration of this ruling must be accompanied by additional factual support.

The Court concludes that GE has not provided sufficient new evidence to warrant altering or amending its ruling with respect to Privilege Log Nos. 103 and 104, communications between employees of two unaffiliated companies with no indication of attorney involvement, request for, or knowledge of the communications. To its Motion for Reconsideration, GE attaches only a declaration of its outside counsel, Shawn Bates, Esq. "[b]ased on my personal knowledge (unless otherwise indicated) . . . ."[9] In this declaration, Bates makes statements, purportedly on "personal knowledge," that attempt to explain Lous's role with respect to GE's

---

[7]   There is no explanation for the oddly delayed response by Lous of more than eleven months.

[8]   The Norway suit refers to Flotech's dispute with Aibel, which was pending in Norway at the time of the Court's December 15, 2010 Memorandum and Order.

[9]   *See* Declaration of Shawn Bates in Support of Defendant's Motion for Limited Reconsideration [Doc. # 141-1], ¶ 1.

litigation efforts. Specifically, Bates explains that Lous (1) is an employee of GE based in Oslo, Norway, who "occup[ies a] role[] in sales and marketing," and (2) "has been regularly consulted by GE's legal team and [is] involved in assisting that legal team in defending against Plaintiff's claims against GE."[10] Bates further explains that Lous was contacted by GE's legal team because he "has knowledge of the marketing and sale of the GE compressors to Flotech for the Chinguetti project, and was contacted regularly by Flotech personnel seeking assistance during the period of the compressor shutdowns,"[11] *i.e.*, some of the events in issue in this litigation. This evidence does not establish that Lous held a special role vis-a-vis attorneys. Indeed, Bates does not explain how he, as outside counsel, acquired non-hearsay personal knowledge of the matters to which he avers. Most significantly, there is no explanation to the Court why Lous, an employee of GE, Bates's client, did not provide a declaration describing his own role and explaining the circumstances of the two questioned communications with Ternow, who was an employee of a completely separate company.

Regarding Ternow's involvement, Bates also makes only unpersuasive representations. Bates declares "on information and belief" that Ternow (1) "is an

---

[10]  *Id.*, ¶¶ 2, 4.

[11]  *Id.*, ¶ 4.

employee of Flotech, and has been so since before the start of Flotech's involvements in the Chinguetti project,"[12] and (2) that Ternow "has occupied a similar role [to Lous] within Flotech, both in his role on the Chinguetti project and in assisting Flotech in defending against claims by Aibel."[13]  These statements, fairly non-specific, do not establish the basis of Bates' "information and belief."  Bates's submission is insufficient factual support regarding the role Ternow played with respect to Flotech or GE's litigation efforts.  *See, e.g.*, *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (affidavit based on information as belief was not based on personal information and failed to properly support facts pursuant to Rule 56(e)).

Finally, GE also has failed to produce meaningful factual support to show that the emails in issue – between employees of unaffiliated commercial enterprises – were sent for the specific purpose of jointly defending either the Norway suit or the lawsuit at bar.  Bates declares "on information and belief" that Ternow emailed the document attached to Privilege Log No. 103 "because he was aware of Mr. Lous' involvement in assisting GE's legal team but was uncertain of whether a copy of the attachment had made its way to Mr. Lous after Flotech's counsel had emailed it to GE

---

[12]    *Id.*, ¶ 3.

[13]    *Id.*, ¶ 4.

previously."[14]  Bates declares that Ternow advised Lous "verbally that the attachment contained information that Flotech was using in its defense against the Aibel lawsuit, and that Flotech felt GE would benefit from because Berge's lawsuit against GE contained essentially the same claims as Aibel's lawsuit against Flotech."[15]  These comments amount to mere surmise and hearsay, some of which is merely "on information and belief."  They do not provide persuasive factual support showing that these emails were sent for the specific purpose of aiding the lawyers and the companies' legal defenses in either this GE or the related Flotech litigation.[16]

The Court concludes that GE has not clearly established a manifest error or law or fact, nor presented sufficient newly discovered evidence to warrant a change in the Court's rulings on Privilege Log Nos. 103 or 104 and the attachment thereto.  The joint defense privilege protects "confidential communications made for the purpose of facilitating the rendition of legal services . . . by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and

---

[14]   *Id.*, ¶ 6.

[15]   *Id.*

[16]   The Court does not here impugn Bates's sincerity or his effort to convey his own knowledge accurately.  Rather, the information he has been provided by his client and/or Flotech is inadequate.

concerning a matter of common interest therein." TEX. R. EVID. 503(b)(1)(C). GE simply has not met the high burden to establish communications between non-lawyers at the direction of attorneys or for the purpose of aiding the companies' attorneys in rendering legal advice. Accordingly, the Court denies GE's Motion for Reconsideration.

### B. Plaintiff's Motion for Relief

Plaintiff has filed a Motion for Relief apparently under Federal Rule of Civil Procedure 37, seeking relief in connection with pretrial discovery that must be repeated or supplemented due to GE's significantly late production of 70,000 pages of documents. GE does not oppose paying Plaintiff's "reasonable extra costs due to the production, including for re-examinations of certain witnesses."[17] The parties, however, disagree about what constitutes a reasonable and appropriate remedy under the circumstances of this case. The parties' disputes concern three broad issues: (1) re-examination of five current/former GE employees, Simone Pratesi, Hamid Sarshar, Joseph Baker, William Taylor, and Coleman DeJong;[18] (2) re-examination of third party witnesses, Stephen Broadbent, Flotech's CEO, who is located in New Zealand, and Kjetil Jacobsen and Karl Martin Karlsen, current and former employees

---

[17]   Defendant GE's Response to Motion for Relief [Doc. # 148], at 1-2.

[18]   *See* Plaintiff's Motion for Relief [Doc. # 144], at 9.

of Aibel, who are located in Norway;[19] and (3) revised expert reports in light of the newly produced documents.[20] The Court determines below what constitutes a reasonable and appropriate remedy as to each of these issues.

The parties exchanged requests for production of documents in this case in the Summer of 2009 and made very extensive document productions for many months thereafter. Depositions in various countries were taken between April and December 2010. In January 2011, GE belatedly produced 70,000 additional pages of documents. This production was made far outside the agreed discovery sequence, and was within two months of the end of a lengthy discovery period.[21] GE's delay deprived Plaintiff of certain documents during many depositions of GE's personnel and foreign third parties. Under these circumstances, the Court concludes that cost-shifting sanctions are appropriate under Federal Rule of Civil Procedure 37(c)(1) to remedy expense to Plaintiff occasioned by GE's significantly delayed production. According to the Fifth Circuit, "[t]he sanctions enumerated by [Rule] 37 . . . are flexible and, within reason,

---

[19]   *See id.* at 10.

[20]   Plaintiff seeks to have its technical expert and GE's expert, Hasu Gajjar, prepare revised reports at GE's expense. *See id.* at 9-10

[21]   Apparently, these documents were produced in electronic format without dates and certain other agreed data fields, making it difficult for Plaintiff to conduct a prompt, meaningful, and organized search of the documents. Plaintiff did not discover that the documents had not been previously produced until January 27, 2011, approximately one-month before the close of discovery.

may be applied in as many or varied forms as the Court desires by exercising broad discretion in light of the facts of each case." *Guidry v. Continental Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981); *accord United States EEOC v. IESI La. Corp.*, 720 F. Supp. 2d 750, 753 (W.D. La. 2010) ("Rule 37 is flexible and the Court has broad discretion to use as many and varied sanctions as necessary to balance out prejudice to the parties."). The Court finds the following remedies are appropriate.

***Re-examination of current/former GE employees.*** – Plaintiff requests, and GE agrees, that GE make Simone Pratesi, Hamid Sarshar, Joseph Baker, William Taylor, and Coleman DeJong available in person for supplemental depositions. GE further agrees these supplemental depositions should take place when Plaintiff's attorneys already are in Houston. GE agrees to pay for a court reporter at each of these supplemental depositions.[22] The Court concludes these remedies are necessary and appropriate under the circumstances and orders GE to comply.

The Court further orders the following, which GE opposes. GE shall pay for a videographer to record a supplemental deposition if the original deposition of a witness was videotaped. The scope of these supplemental depositions may include

---

[22] Alternatively, Plaintiff may incur the cost of its counsel traveling to Houston to take the depositions on his preferred schedule, arranged on reasonable notice with GE's counsel and the witnesses.

any topic touched on by the newly produced documents.[23]  Each supplemental deposition may last a maximum of three hours.

GE shall not be required to pay Plaintiff's attorneys' fees or any costs associated with Plaintiff's attorneys' preparation for the supplemental depositions. These costs would largely have been incurred by Plaintiff in counsel's preparation for the original depositions had GE made timely production of the documents in issue. *See, e.g.*, *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (holding that award of fees for underlying discovery requests was improper sanction under Rule 37 because "[d]iscovery dispute or no, those fees would have been incurred.").

***Re-examination of third party witnesses abroad.–***  In its Response, GE agrees to try to arrange the voluntary appearance of foreign third party witnesses Stephen Broadbent, Kjetil Jacobsen and Karl Martin Karlsen.  The Court orders GE to use best efforts to secure the appearance of these witnesses.  If these witnesses will not appear voluntarily, the Court may require GE to bear the burden of obtaining orders compelling these witnesses to testify and/or may preclude GE's use of some or all of these witnesses' testimony in further proceedings.  The Court declines, however, to

---

[23]  "Newly produced documents" means documents different from documents GE previously disclosed in discovery.  Duplicates of previously produced documents are not "newly produced" unless the new copies contain unique handwritten or other markings.

rule on these contingencies at this time.  If the witnesses refuse to appear voluntarily, the Court will address the matter on further briefing and a more complete factual record.

The Court further, over GE's opposition, orders the following remedies regarding the foreign witnesses.  If Plaintiff requires, these depositions will be conducted in person,[24] and GE must pay the costs of a court reporter and videographer.  The scope of these supplemental depositions may include all topics addressed by the newly produced documents.  The supplemental depositions may last up to three hours each.  GE must pay the cost of one of Plaintiff's attorneys' travel expenses[25] to participate in the supplemental depositions.  GE shall not be required to pay Plaintiff's attorneys' fees or any costs associated with Plaintiff's attorneys' preparation for the supplemental deposition.  *See, e.g.*, *Tollet*, 285 F.3d at 368.

***Revised expert reports.*** – "The requirement that the party provide a complete report of the opinions that the expert will offer at trial is to allow the opposing party to effectively cross-examine the expert, designate a rebuttal expert, and prepare for trial."  *Bro-Tech Corp. v. Purity Water Co. Of San Antonio, Inc.*, No. SA-08-CV-0594-XR, 2009 WL 1748539, at *7 (W.D. Tex. June 19, 2009); *see also Muldrow v.*

---

[24]  At Plaintiff's option, one or more of the supplemental depositions may be taken by video or teleconference.

[25]  The Court approves Coach class travel here.

*Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010). GE has indicated that it does not seek or need revision of Plaintiff's expert's report. Further, Plaintiff's expert's review of these documents is a cost that would have been incurred had the documents been timely produced. Accordingly, GE is not required to pay any costs associated with Plaintiff's expert's review of the late-produced documents or revision of the expert's report.

On the other hand, Plaintiff does seek an updated report by GE's expert, Hasu Gajjar. The Court will require that GE provide revised or supplemental report at GE's expense.

***Costs of Preparation of the Motion for Relief***. – Plaintiff additionally requests that GE pay the costs associated with filing the instant Motion for Relief. Under the circumstances in this case, the Court concludes this relief is not warranted and the request for costs is denied. The relief granted above is sufficient to sanction the inadvertent error of GE for its e-vendor's errors.

## III.   CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Reconsideration [Doc. # 141] is **DENIED.** Defendant is ordered to produce Privilege Log Nos. 103 and 104 and

attachments in accordance with the Court's December 15, 2010, Memorandum and Order [Doc. # 140]. It is further

**ORDERED** that Plaintiff's Motion for Relief [Doc. # ] is **GRANTED in part and DENIED in part** in accordance with the rulings in this Memorandum and Order.

SIGNED at Houston, Texas, this 1st of **March, 2011.**

_____
Nancy F. Atlas
United States District Judge